Case number 16-7065, et al., Oscar Salazar, by his parents and next friends, Adela and Oscar Salazar, et al., versus the District of Columbia, et al., Appelants Chartered Health Plan. Mr. Love for the appellants, Ms. Millian for the appellees. Mr. Love for the appellants, Ms. Millian for the appellants. Mr. Love, good morning. Good morning, and may it please the Court, Richard Love for the District of Columbia, if I may reserve two minutes for my rebuttal. In addition to expanding its Medicaid population, the Affordable Care Act required the district to build a new automated eligibility system that could determine and process initial and renewed Medicaid eligibility by checking existing databases, transforming a system that had previously required individuals to document their eligibility in the first instance. In its April 4th order, the district court repeatedly recognized the substantial progress the district had made in implementing this system and found that by the end of February 2016, it had eliminated almost entirely the prior problems in timely processing initial and renewed Medicaid benefits. Nonetheless, the court imposed a sweeping injunction requiring massive changes based on its conclusion that the district had not entirely remediated the problem, its belief that its oversight was beneficial, and that it had no assurance that the eligibility problems will not recur. The court's findings, however, did not support this conclusion or justify the injunction that it imposed. The court identified only one instance post-February 2016 of a problem processing initial applications for Medicaid, and only two problems with regard to renewals. And pre- or post-February 2016, the court identified only four instances that involved children. Are these the declarations that are in the record? This is from the court's own findings, Your Honor. I understand. There are various declarations in the record from individuals. That's correct. Who encountered one of these problems. So are those the four cases you're referring to, responding to? Are those the four in which there are declarations in the record? Those are the court cited to four instances that were, and she relied on some of those declarations to support that finding. No statistical information? There was no statistical information at all. The record shows that there are some almost 98,000 EPSDT-eligible children, and the court did not do any statistical analysis that showed that there was a problem with regard to Medicaid eligibility that was leading to either a widespread or an ongoing problem with children receiving EPSDT benefits, the only live portion of the settlement agreement that the court relied on to impose the modifications that it did. It's the only prospectively applicable provision that remains in the lawsuit. Ordinarily to get injunctive relief, a party's got to show that there's a substantial risk of recurrence under Los Angeles v. Lyons just to have standing to seek injunctive relief. What happens when we're in this post-final judgment consent decree enforcement context and new injunctive relief is required? Do you still have to—I noticed you all didn't make a Los Angeles v. Lyons argument, and I'm curious as to whether one still has to make that type of showing to get injunctive relief once you're already in this context. Well, I think we did make that argument. It's in the reply brief that referenced Los Angeles v. Lyons, but I was going to say that in terms of relying on the lack of assurance that the court cited in its finding, that's really shifting the plaintiff's burden to ensure that they are realistically threatened by a recurrence of the eligibility problems. And that's not a finding that the court made, nor is there evidence to support such a finding. Yeah, I'm just trying to understand. Are you aware of cases that have addressed how this burden applies once you— they've already made some initial showing when the initial consent decree was entered as to this prospectivity. Are there cases that say—I'm literally just asking the question about how it applies now. I understand the question. My response would be, first of all, the provisions with regard to Medicaid eligibility were terminated. And I don't know of any cases that distinguish between imposing an injunction in a post-consent decree case, even through Rule 60B that relaxes the requirement of Los Angeles v. Lyons that they show they're realistically threatened by a repetition. If you're right, that's a jurisdictional argument, right? And so it should have been—it wasn't teed up that way to us. So I'm trying to figure out if it's some sort of softer version that applies now. I'm not aware of any that would lessen that requirement because of the context in this case. The court said, without that showing, the requirements for an injunction in federal court, whether the injunction contemplates intrusive structural relief or the cessation of a discreet practice, has not been met. And that would be the case here. I mean, here the court ordered basically a massive change in the process the district was undergoing to bring about the improvements and changes required by the Affordable Care Act with no benefit because, according to its own findings, the problems were ameliorated by late February 2016. And furthermore, you know, as we indicated, you know, the changes with regard to Medicaid eligibility, you know, there was no demonstration that they were preventing EPSD-eligible children from receiving benefits after eligibility was determined. And the problems, the changed circumstances that was the focus of plaintiff's motion and complaint regarded, at least with regard to the renewal modifications, events that were anticipated in 2013 to be both long and rocky, which is another reason that the renewal modifications, at any rate, are improper here. Can I ask, in 2009 when the eligibility determination provisions were terminated, I assume did that, did those eligibility determinations include both adults and children? Was that class initially adults and children? Because it seems like the EP, I'm going to get the acronym wrong, EPSDT or EPDST provisions were more about the administration of services and not eligibility for children. I'd assume their eligibility was covered under the big eligibility section of the class action. That's correct. And I think one of the points on the legal issues that we raised was, you know, that this settlement order was structured in a certain way. It had separate sections that identified a particular distinct set of claims. The sections were separable, and they also had exit criteria where the Medicaid eligibility sections were independently terminable without regard to the performance or relation of the other sections. So, you know, I mean, this is why we say the district was deprived of the benefit of its bargain, but no. As to 2013, that's the one I'm more, a little confused about the status of it. 2009 was pretty explicit, vacated, and court supervision is ended. In 2013, you all call that terminated, but all the district court did was say you're relieved from complying with Section 3 of the consent order, which sounds, at least as a district court, one way of reading what the district court did there in its decision was say what the settlement agreement had obligated you to do was stuff that is actually nonsensical now that the Affordable Care Act imposes even more aggressive obligations on you all. So one way of reading it is that what happened in 2013 was not a termination but almost a substitution. We're going to erase those things that we were obliging you to do because they're contrary to law, and now your obligation, which you all agree going forward, is to do what the Affordable Care Act says. So that's getting plugged in, and then what happens when they come back in 2015 is they go, guess what, you're not doing what the settlement agreement now requires you to do, which is comply with the Affordable Care Act as to renewals only, not as to... I understand the court's point. In fact, I looked this up over the weekend, and unfortunately I can't find the exact spike, but there is language in the court's order that uses the language that it terminated the provisions related to renewals. Well, look at the actual order on JA321. Isn't that what we should be? If you don't have it right now, you can show us on rebuttal where it says terminated, but the order itself says relieved from complying with Section 3. I was talking about in the opinion, the memorandum opinion, it uses that language, and I just overlooked writing down the site, although I did check it, because I believe we quoted it in our brief, and I wanted to make sure I was quoting from the opinion itself, and it is a quote from the opinion itself. Moreover, in that opinion, the court says that the provisions regarding initial applications and renewals had no force and effect, and that the only live provisions of the settlement order regarded the EPSTDT provisions. So there was no substitution intended here or asked for. It's a pretty different language than was used in 2009, right? 2009 was pretty clear vacated, and court supervision ended, and we don't have anything like that here, at least it seemed to me from reading the opinion and order together, and certainly the operative language of the order, that all that was being held was that you didn't have to do the mailing out and all that stuff, which federal law now said you can't do. You have to do passive renewals. If that were the case, we wouldn't have needed a motion to modify. We would have been a motion to hold the district in contempt of those provisions. That's not what happened here. So I don't think there's any, I understand the language that was used, but I think given the court's clear language that those provisions no longer remained in force and effect, and the language which basically says it terminated in 2013 those provisions, I think it's clear there was not a substitution here. The only final point I wanted to make was about the suitability. We also would submit that the order wasn't properly tailored because it expands the remaining scope of this case to adults, increases the court's oversight and the course of compliance, and fails to preserve the essence of the parties. What would a properly tailored order look like? Well, it would have been, I mean, again, we have a number of arguments and reasons why the order was improper in its entirety. I understand that. Your alternative is the relief system. Right, at least it would have been tailored to the harm, to address the harm to the EPSD children. Well, how could that be done without addressing the adults, their parents? Well, the relief could have been tailored to EPSD services that are requested. I mean, the EPSD provision, the notice, I mean, the provision requires EPSD services upon request, and I think the order could have been tailored to, since it relied on the EPSD provisions for the prospect of applicability required under Rule 6e, it could have tailored the relief to that class of children. So this would be a request on behalf of the child made by a parent who is not enrolled? Well, if, for example, under the modified order that currently exists, if it was tailored to individuals who come forward and say that their initial application for their child wasn't processed in 45 days or that the eligibility for their child was not being renewed despite them submitting the required paperwork, that certainly would be more tailored than the current order, which is not tailored in any way to the harm. Well, if it was tailored, it wouldn't have any effect. The judge's concern here was that if the parents weren't enrolled, they wouldn't get a notice. And you're saying, well, they can make a request. Well, no, they would be enrolled. I mean, basically the order as it exists is to deal with eligibility problems as a predicate. It doesn't deal with EPSDT services. Is it possible for a child to be eligible if the parents are not? Well, there are parentless children that are eligible for Medicaid, yeah. But if they have parents, they come in together? Right, I think they come in through their parent's application, but I think a parent... Foster, if kids have foster parents, do the kids themselves qualify? Guardians. I'm not certain of that, but I would imagine that's possible, but I don't want to speculate. I'm just concerned because the narrow or suitable, and it's not narrow, it's suitable, right? Suitably tailored. And if something is so tailored as to be vacuous, have no practical effect, it's not suitable. Right, but I think that eligibility tailored to the child who is eligible for EPSD services is certainly an order that could have been derived. Of course, there are other suitability problems, including reasserting local authority over the district's local functions, increasing the cost of compliance and failing to ensure that the party's bargain, which the court in Pigford said is a requirement, must, and here the district was deprived of its bargain, but I think there is a way to tailor this that it would have been... Did you propose anything to the court as an alternative? I don't believe so. She didn't address it. If you did, she didn't address it. Well, we certainly raised the argument that it wasn't suitably tailored. Oh, no, I understand. I don't know that we suggested that, no. You may not have wanted to bait the trap. I'm not sure what the thinking was on that. I know we did not. Thank you very much. Just to save you time, is JA 315 where the terminated language is? So you don't have to tell me when you come back up. Ms. Millian. Your Honors, may it please the Court. In 2015, the processes of the District of Columbia Medicaid Agency for deciding Medicaid eligibility at application time and at the time of annual renewal were in a crisis situation. The crisis prevented children and families from obtaining Medicaid and the access to the vital medical services that Medicaid eligibility provides. For children up to age 21, Medicaid is the EPSDT program. Under the settlement order, parents, guardians, and pregnant women have prospective rights to notice about the EPSDT program if they are eligible. That's paragraph 54 of the settlement order at JA 286. The district court found, and defendants do not challenge on appeal, that the evidence showed that thousands of Medicaid beneficiaries have been deprived of the necessary medical care to which they are entitled. What was the status in 2016 when the injunction was issued? These problems continued as the district court found. Your Honor was questioning whether plaintiffs... Well, the district court kept finding zero. There were zero cases and backlogs, and zero cases was what I saw in the opinion. The court cited the evidence presented by the district that they were zero, but then the court noted that the evidence presented on the other side by plaintiffs showed that even after the point where defendants said it was zero, we had Medicaid beneficiaries and applicants coming forward who had problems. For example, at JA 1294, 1295, the court cites that as of March 9, 2016, after the date the district represented that it had eliminated the application backlog, Ms. Flores-Rivas had not received notice of DHS's determination concerning her children's application. I just wanted to... At JA 1294, 1295, that's the district court finding. There are numerous places, and I have a few more, I guess, where the court said it in other places. When plaintiffs sought the relief from Judge Kessler... That was 2015, Ms. Flores-Rivas had not gotten her notice. I'm talking about the district court's findings that by 2016 things were down to zero or essentially had been resolved, but it could happen again. Well, that's right, it could happen again, and the court cited specific instances where it was happening again, even after the date that the District of Columbia had represented all of the problems were solved. The court said that at JA 1321 that since plaintiffs filed their motion in December 2015, in over one month the District of Columbia represented that it solved a thousand cases, and the court said that its oversight had been a boon rather than a hindrance. At JA 1328, the court said there were systemic problems that arose during the district's implementation that may well arise again. Right, is that... What's the standard required to get injunctive relief in this posture or to have standing to get prospective relief under Los Angeles v. Lyons in this post-judgment standard context is the court has no assurance that the problems won't arise again? Is that sufficient? Because that wouldn't be sufficient if you were seeking an injunction in the first place. Well, we think that essentially it's the same standard. We need to show that there would be irreparable harm if the injunctive relief was not granted and that for people on Medicaid who don't have eligibility, that is easily met. No, it's not the irreparability of the harm that I'm asking about. It's the likelihood of it continuing to occur prospectively. The standard for that under Los Angeles v. Lyons is a burden on you to show... That's correct. ...that it's going to recur, to affirmably show that it's going to happen again going forward. And I guess for a class, you'd have to show it... For class-wide relief, you'd have to show it at a class-wide level. That's right, Your Honor. And we submit the evidence that we submitted, much of which was based on defendants' own admissions, did meet that standard. We showed that in late 2015, the district itself was admitting thousands of cases were backlogged. In November 2015, CMS wrote to the District of Columbia and chided it for not processing Medicaid renewals in shorter than 90 days, that they should not take this long. The district court cited that in its opinion. Our motion was filed in December 2015, and the district court noted in its opinion in April 2016, the district currently cannot accept renewals submitted online. That was a requirement it was supposed to be able to do. The district court also mentioned in its opinion, as to the current state of affairs when it issued its decision at JA 1310, some Medicaid beneficiaries have had difficulty renewing their benefits over the telephone, and the long lines at service centers and paperwork processing already discussed are likely to lead to future losses. So the court had already found that, based on our evidence, there were long lines at service centers all around the city where people were being asked to come back another day, because nobody could see them that day, or to resubmit materials they had already submitted because the district's processes were in disarray and those materials had been lost. Let me ask you, when you're in this post-judgment context, there has to be a line between modifying an existing structural injunction and just getting a whole new injunction, as long as we're here in front of the court. What is the line? How do I know whether this is modifying the existing injunction, or is instead a whole new injunction? Well, Your Honor, we submit that this is modifying the injunction under Rule 60b-5 since the district court had an active consent decree that it had been monitoring for many years where the prospective parts of the decree, the EPSDT section for children up to age 21 and the EPSDT notice section for their parents and guardians and pregnant women, could not be carried out with the eligibility system in a crisis where people were losing benefits by the thousands in cases where they were sitting in backlogs. But the eligibility provisions had been vacated and court supervision had ended in 2009. So that can't be what you were modifying, because you admitted you weren't trying to bring that back to life or restoring it. So those are gone. Eligibility system is gone. Well, there are two parts of eligibility. So one is at the renewal time and one is at the application time. So the 2009, we agree, that was ended in 2009 when the district met a compliance standard. But the conditions that arose from 2013 to 2015 as it tried to move to new computer systems meant that the children who were subject to our order and have prospective relief and entitlement to EPSDT services under an injunction that remained active in the settlement order that said provide EPSDT services to children, the court found properly no child can get any EPSDT service if they are not having active Medicaid eligibility. Right. But when the settlement was originally created, my understanding confirmed by counsel was that those children's eligibility, put aside renewal, just put that aside for a minute, upfront eligibility was covered by the eligibility provisions that were terminated in 2009. Do you agree with that? We agree that the eligibility parts of the settlement order were terminated in 2009. Those eligibility parts included adults and children? Correct. Okay. Correct, we agree with that. All right. And so the problems that you're talking about are purely renewal problems? They're both. They're both because both systems meant people were not getting, the District of Columbia was not able in late 2015, early 2016, to comply with federal law about what's required to consider the eligibility of children and families. But then that sounds to me like it's a whole new injunction because eligibility was gone. It disappeared. It was though we had a settlement that was only about EPSDT, and I think it's unclear what the status of renewals were based on the 2013 order. But as to just plain upfront eligibility, that's gone. So how is it just not a whole new injunction that you have to meet all the ordinary procedures for an injunction? Well, Your Honor, under RUFO, what remained in the settlement order, what the court had under its active supervision, the notice provisions about EPSDT to families and parents and guardians, and the services provision became unworkable. No, but RUFO and the plain text of Rule 60b-5 is about relief from an existing order. But I'm not sure how layering on new injunctive obligations, as the district court said, new facts, new relief, is relieving somebody from an existing injunction. I don't think they feel like they were relieved from the order. Well, the plaintiff class was relieved from having an injunction that said provide EPSDT, but by the way, you're not going to be eligible, so you don't get any EPSDT. That's back to my question. If relief applies to plaintiffs getting a new injunction, if that's what relief means, then there's no line between modification and new injunctions. In a way, it's always a new injunction under Rule 60b-5. In RUFO, there was an agreement between the parties there would be a single bed in the prison cells, but because of changed circumstances, the government was able to come back and say it would be too expensive, we have too many prisoners now, things have changed. You're making it softer for the defendant. I'm talking about piling on new injunctive obligations. The district court said this is new law, new facts, new relief. So it's hard to figure out how that isn't a new injunction. The district court did not say it was new law. The district court said implementing a new rule. Everyone agreed to that after 2013. It was the Affordable Care Act you were enforcing. There's no question that this is not the law that the settlement agreement was entered on. We don't agree with that. The law that governs eligibility and the law that governs not being cut off without notice at renewal is the same law that was sued about in 1996. It's the Medicaid statute that provides for the applications must be taken and decided with reasonable promptness. There are regulations specifying 45 days as a limit. As for renewals, there's the Fifth Amendment of the Constitution, which says you can't be cut off without notice, which is what was happening by the thousands in 2015 to Medicaid applicants and beneficiaries and meant, as the district court properly found, that the Affordable Care Act, violations of the Affordable Care Act had nothing to do with your 2015 motion. The district's efforts to implement the Affordable Care Act meant that they were no longer complying with the basic core federal law requirements about processing applications in 45 days and not cutting people off at renewal without notice. And Judge Kessler, who tried the case, who entered the settlement order, and who actively supervised this decree over a period of 17 years, concluded based on the record, a voluminous record by both defendants and plaintiffs, that the conditions in front of the court were such that the purposes of the order that remained, the prospective purposes, could not be carried out without some relief for the class. And it is narrowly tailored to only those whose application is pending over 45 days and only those who are being cut off at renewal before the District of Columbia has acted on their renewal application are entitled to any relief. Plus, the district can come back at any time it wishes to prove that it's now in substantial compliance with those requirements and the order ends. So you're saying that under the modified order, only, with respect to children, only the child of someone who's been on the queue for more than 45 days would be entitled to notice? Only a child or only a person whose application has been pending more than 45 days gets any relief under the order, the application part of the order. And that relief is a notice that if you have children, et cetera. And, well, the relief under the order that Judge Kessler entered in April 2016 is you are placed on Medicaid until such time as the District of Columbia makes an affirmative decision that you're not eligible for Medicaid. So the people whose application... But the purpose in doing that was as a means of assuring EPSDT services for children, right? As a means of assuring that and as a means of assuring also the notice provisions under EPSDT go to the parents, the guardians, pregnant women. Ultimately to make sure that those services get to children. Notice about the EPSDT program, that's right. Those folks have a prospective right under the settlement order to notice about the EPSDT program for their children or for their future children. Why does affecting a notice requirement like that have to entail approving the application of the adult or extending or giving the renewal provisionally? Rather than simply saying, you've been on the list more than 45 days. We don't know whether you're going to be approved. If you have children, here's this notice. And if there's a... If they want to make a request or you do on their behalf, come forward. Well, because the order itself, paragraph 54 of the settlement order, says that the notice goes to parents, guardians, pregnant women who are Medicaid eligible. So if you're... That's in the settlement order. That's in the settlement order. It's not in the statute, so why can't that be changed? Well, perhaps it could be changed, but neither defendants nor we have urged that that part of the settlement order be changed. But since the notice... Well, the argument here that you're countering is that the relief in the modification is overbroad. I mean, it's not suitably tailored. That's right. I'm asking you whether this wouldn't be a more suitable tailoring. Well, Your Honor, the relief that was granted, as some of the questions earlier, children, very few exceptions, perhaps foster children, apply for Medicaid with their household unit. So there's one application, one renewal, and the District of Columbia either process it timely or not. So the... You can imagine a situation in which people are in the queue. They're not yet approved. And the district would say to them, if you have an acute situation that you believe requires immediate attention, let us know. Now. And we'll either provisionally approve you or just look at the situation and then decide whether to approve you. Either way. That would... You can see the parallel with respect to the children here. That's very similar to what the court did when it modified the stay in July 2016. It required provisional approval of the adult's application. Except what the court did in July 2016 was say that the applicant or renewal candidate had to come forward and identify themselves to the District of Columbia with a good faith claim, and then the District of Columbia could act on it. But the person, if they put forward a good faith claim, they got the relief of provisional eligibility either at renewal time or at the application time. So what Your Honor is suggesting is similar to what the district court did when it modified the injunction in July 2016. My understanding is that it ordered approval after very provisional approval at day 46. Not just what it said. Your Honor is suggesting somebody would come forward if it was an emergency situation and ask for action on the application. Correct me if I'm wrong. My understanding is the district court's order wasn't limited to people who have children. It's anybody who's Medicaid eligible in the district. Am I misunderstanding the order? No, that's correct. It applies to everybody. How is that suitably tailored? It's suitably tailored because it's a time-limited order. And as soon as the District of Columbia can come forward with substantial evidence... That doesn't make it... They could do anything as long as we only do it for six months. That can't be the answer. Well, I would note that the District of Columbia did not argue below that any subset of adults or children ought to be excluded from the relief. They simply argued... Well, that's because they didn't think you should get any relief at all. That's right. That was an umbrella argument. Certainly the greater included the lesser. So I'm just trying to figure out how you can explain to me that it's suitably tailored to have this relief for every Medicaid applicant in the district regardless of whether they have children getting services. Well, first we submit that for all children, 40% of those on Medicaid and their parents, guardians, and pregnant women, which we don't have a number in the record, but certainly together with 40% of children is the majority. And is it true for guardians? Yes. Does guardians have to be eligible for the children to get? I would think it would follow the child even if they're going into someone else's care. Is that not true? Well, what I was speaking of about guardians is the part of the order that says that there's prospective right to notice under the decree, and it includes parents, guardians, and pregnant women have the right to notice about ETSDT. So for that group, we would submit that the order is suitably tailored because it's directly to them. It is correct that there's another proportion of those on Medicaid who do not have children, for example, the disabled. Well, it sounds like 60%, right, if you say 40%. Well, no, because 40% is just the children. So up to age 21, just children are 40%. Their parents and their guardians make up another additional percentage, which certainly puts it over half of those on Medicaid come into those areas that are prospectively governed by the notice and by the services sections that have prospective application. And we would point to Brown v. Plano, where if there are collateral positive effects of a court's proper injunctive order that benefit people who aren't in the class, then that can be acceptable exercise of discretion under Rule 60b-5. So it is correct that some individuals who aren't under the EPSDT notice or service provisions do get benefits or will get benefits if Judge Hessler's order is affirmed. All right, your time is up, so thank you. Thank you. All right, does Mr. Love have any? All right, we'll give you two minutes. Just a couple of very quick points. Counsel repeatedly talks about thousands of people. Let me read a quote from the court's memorandum opinion. Since the filing of Plano's initial motion on December 22, 2015, Sorry, what page are you on? 1321, the bottom paragraph. Since the filing of Plano's initial motion on December 22, 2015, the district has been able to resolve all of the thousands of remaining cases in just over one month's time. While the district's progress is commendable, the timings of it suggest that the court's oversight has been a boon rather than a hindrance. And then goes on to also say it has no assurance, as we've discussed before, that these problems won't recur. Quickly on EPSD provisions, first of all, they've always been restricted to individuals who've been determined to be eligible for Medicaid benefits. That's right in the settlement order at 271 and 286. And the settlement order, as I said, provides distinct remedies for the separate subclasses, each of which is independently terminable without regard to the performance or relation of the other subclasses. The notice provisions aren't even dependent on eligibility. A lot of that is outreach to some of the district's providers and is given in trainings and other things that really aren't dependent on eligibility. But finally, I did want to reiterate that we had raised issues with the court's application of Rule 60B here because it granted additional injunctive relief based on violations of a law that didn't exist when it approved the settlement order. And the facts in 2015 are simply incomparable to the facts when this case was tried in 1996. It reasserted authority over local functions without considering the federalism concerns. And it improperly based its authority to reimpose requirements that lost their prospective application based on the prospective applications of, as I've said, segregable EPSD provisions that address separate claims and had different unrelated exit criteria. For those reasons, we'd ask that the court reverse the court's order of April 4th and the belated order. Thank you.
judges: Henderson, Millett, Ginsburg